TERMINAL STEAMSHIP COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77214. Filed August 31, 1960.

*Herbert L. Cohen, Esq.*, for the petitioner.
*James E. Markham, Jr., Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1955 of $23,338.60.

The only issue to be decided is whether the respondent erred in disallowing a part of a net operating loss carryover claimed by petitioner in 1955 by reason of respondent's determination that a net

sum of $57,000 received in 1954 was ordinary income and not capital gain.

FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioner is a Delaware corporation, having its office and principal place of business in the City of Wilmington. Its sole business is the operation of steamships for hire. Its income tax returns for the years in question were filed with the director of internal revenue for the district of Connecticut.

During 1954 petitioner owned a Liberty dry cargo vessel known as SS *Lumber Carrier*. Under a temporary policy adopted by the Maritime Administration of the United States Department of Commerce where two or more vessels were owned by one entity, approval was granted for the transfer of one vessel of each two owned to foreign registry. Where the owner of but one Liberty vessel desired foreign registry, approval of the transfer of registry for such vessel was granted only if the owner joined forces or "paired up" with another owner of a single vessel (or an owner of an odd number of such vessels) and the other owner agreed to retain his ship under United States registry. This policy was in effect from August 16, 1954, to December 17, 1954.

In accordance with the policy set forth in the preceding paragraph, petitioner, on or about October 28, 1954, "paired up" with Eastport Steamship Corporation of New York City and agreed to retain its vessel, SS *Lumber Carrier*, "under United States Registry for as long a period as the United States Maritime Administration so dictates." For this latter commitment petitioner received $62,500, from which the amount of $5,500 was paid as a commission, leaving the net amount of $57,000 as proceeds from Eastport Steamship Corporation, which was permitted to transfer its vessel, SS *Westport*, to foreign registry.

In the balance sheets attached to its return for 1954, petitioner reduced its asset "Floating Equip.-Vessel" from $539,655.85 at the beginning of 1954 to $482,655.85 at the end of 1954, a reduction of $57,000.

In the statement attached to the deficiency notice, respondent said in part:

It is determined that the receipt of a payment in the net amount of $57,000.00 from Eastport Steamship Corporation during the year 1954 represents ordinary income and not the proceeds of a sale or exchange of property. The above amount is added to your taxable income for the year 1954 under the provisions of Section 61, Internal Revenue Code of 1954.

The receipt of the net sum of $57,000 by petitioner during 1954 constituted ordinary income and not capital gain.

## OPINION.

Whether the net sum of $57,000 received in 1954 by petitioner from Eastport Steamship Corporation represented ordinary income under section 61, I.R.C. 1954,[1] or constituted capital gain under subchapter P, sections 1221[2] and 1231,[3] depends upon whether its agreement dated October 28, 1954, with the Eastport Steamship Corporation constituted a sale or exchange of property. The material part of this agreement, insofar as our question here is concerned, is as follows:

It is mutually understood between your goodselves and Terminal Steamship Company, Inc., that for the enclosed letter, in which we agree to retain the S/S "LUMBER CARRIER" under United States Registry for as long a period as the United States Maritime Administration so dictates, you will pay us $62,500.

The "enclosed letter" referred to in the above-mentioned October 28, 1954, agreement is a letter dated October 28, 1954, by petitioner to the United States Maritime Administration, the body of which is as follows:

Reference is made to the application of the Eastport Steamship Corporation to transfer to foreign ownership and registry the vessel S/S "WESTPORT" which application is pending before you, and to the condition imposed in connection with your transfer policy under the terms which were specifically set forth in your directive dated August 25th, whereby an American Flag liberty vessel shall remain under American ownership and registry for each such vessel permitted to transfer foreign.

This will serve to advise you that in consideration of the consent of the transfer of the S/S "WESTPORT" by the United States Maritime Administration, the S/S "LUMBER CARRIER" will be retained under American ownership and registry for as long a period as the United States Maritime Administration so dictates.

The above agreement petitioner had with the Eastport Steamship Corporation falls far short of constituting a sale or exchange of property. This was merely an agreement to "retain" the SS *Lumber Carrier* under United States registry for as long as the policy announced by the United States Maritime Administration was in effect. For this "retention" petitioner was to be paid $62,500. There

---

[1] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *

[2] SEC. 1221. CAPITAL ASSET DEFINED.

For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * *

[3] SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

was no agreement to sell, transfer, or dispose of any property. After the said policy of the Maritime Administration was no longer in effect, namely, after December 17, 1954, petitioner was no longer under any agreement or obligation to retain the SS *Lumber Carrier* under United States registry. It was in exactly the same position in respect to its ship as it was before it entered into the agreement with the Eastport Steamship Corporation. It might be argued that by agreeing to "retain" the SS *Lumber Carrier* under United States registry petitioner in effect gave up or parted with its right to apply for foreign registry and that the surrendering of this right was in effect a sale or exchange of property. However, since petitioner only had the one ship, it had no right to apply for foreign registry between August 16, 1954, and December 17, 1954, unless it could "pair up" with another owner who would agree to retain a ship under United States registry. Upon the termination of the Administration's policy on December 17, 1954, petitioner then clearly had the right to apply for foreign registry if it so desired. In other words, it was then back in the same position it was in prior to the announcement of the policy on August 16, 1954. Therefore, we fail to see wherein petitioner in entering into the agreement with the Eastport Steamship Corporation sold or exchanged any property. The net amount of $57,000 was paid petitioner merely for its agreement to retain its ship under United States registry during the period the above-stated policy of the Maritime Administration was in effect. We hold that the net amount of $57,000 received by petitioner was ordinary income rather than capital gain. In so holding, we agree with that part of Revenue Ruling 58-296, 1958-1 C.B. 276, relied upon by respondent, which states:

Payments received for agreements to retain ships under American registry procured for the purpose of enabling the payors to meet the requirements of the Maritime Administration under the temporary policy in effect between August 16, 1954, and December 17, 1954, so as to be able to transfer like ships to foreign registry, constitute ordinary income and not capital gain. Such an agreement does not constitute a sale or exchange of property. * * *

The respondent's determination is sustained.

*Decision will be entered for the respondent.*